**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

CHRISTOPHER PUMROY,

Plaintiff-Appellant,

v.

MARTIN J. O'MALLEY, Commissioner
of Social Security,

Defendant-Appellee.

No. 23-35332

D.C. No. 4:22-cv-05082-SAB

MEMORANDUM*

Appeal from the United States District Court
for the Eastern District of Washington
Stanley A. Bastian, Chief District Judge, Presiding

Argued and Submitted May 6, 2024
Submission withdrawn May 7, 2024
Resubmitted June 25, 2024
Seattle, Washington

Before: W. FLETCHER, BEA, and OWENS, Circuit Judges.

Christopher Pumroy appeals a denial of disability benefits. He is a 39-year-old combat veteran with post-traumatic stress disorder ("PTSD") and carpal tunnel syndrome, both related to his military service. The Administrative Law Judge

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

("ALJ") denied benefits after finding that Pumroy can perform other work that exists in the national economy such as a janitor, packager, or landscape specialist. The ALJ dismissed Pumroy's testimony about his ongoing symptoms from carpal tunnel syndrome as noncredible, based on medical evidence in the record. We have jurisdiction under 28 U.S.C. § 1291, and we vacate and remand on this issue. We affirm the ALJ's finding that Pumroy's PTSD did not prevent him from performing other work in the national economy.

This Court reviews a district court's order affirming the ALJ's denial of social security benefits de novo and "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Lambert v. Saul*, 980 F.3d 1266, 1270 (9th Cir. 2020)). This Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (quoting *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014)). Substantial evidence does not support an ALJ's residual functional capacity assessment if the ALJ improperly rejected the claimant's testimony as to the severity of his pain and symptoms. *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024). When the claimant's underlying impairment is supported by objective medical evidence, the

2

ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony about the severity of their symptoms. *Id.*

In this case, the ALJ found Pumroy's testimony about his carpal tunnel symptoms was inconsistent with medical evidence that Pumroy's surgeries yielded "excellent" results. That conclusion is not supported by substantial evidence in the record. It is true that Pumroy's two week follow up appointment appeared hopeful for the results from his surgery. The medical notes state: "[i]mprovement in numbness noticed already. Pain is controlled at this time . . . . Full range of motion of the elbow with minimal pain, 5/5 strength intrinsics, improvement in the ulnar nerve distribution sensation." At the time of that appointment, however, Pumroy had been using his arms with restrictions and avoiding "repetitive flexion and extension of the elbow." An optimistic evaluation at an appointment two weeks after surgery is not necessarily inconsistent with ongoing, long-term symptoms of carpal tunnel syndrome.

We also note that strength/grip function is distinct from pain associated with using that function, and Pumroy's subjective symptom testimony focused on the pain associated with using his hands and arms in a normal way for more than a few minutes. Pumroy testified that the "pain has kinda subsided with the carpal tunnel" and gotten better in his left elbow, but that the right elbow and right arm still

3

experienced pain.  He is right-handed, and at the time of his testimony he was waiting for approval from the Veterans Health Administration to do a surgery on his right elbow.

Pumroy testified that he can only use his hands for a couple minutes at a time and that he was using headphones for the telephonic hearing because "holding the phone up to [his] ear" would make his hand go completely numb.  After about three minutes of use, he must "stop and shake [his hands] out and put an ice pack on them" for 15 to 30 minutes.  When he goes back to using his hands, they will work for a few minutes before going numb again and requiring more rest.  He testified that he could carry grocery bags by wrapping the loop around his wrist, but that his grip strength was very minimal.  The ALJ asked whether he could grip a handle of milk, and Pumroy said that he could not grip the handle and would have to carry it in a bag looped around his wrist.  He explained that even after surgery for his carpal tunnel syndrome, it was painful to hold anything, try to open containers, or perform similar movements.

At Pumroy's hearing, the vocational expert testified that somebody with the carpal tunnel symptoms Pumroy described would not be able to perform any of the other work identified by the ALJ.  Substantial evidence does not support the ALJ's

finding that Pumroy's testimony about his ongoing carpal tunnel symptoms was not credible. We remand for further proceedings on an open record on this issue.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**